IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ERICK DONALDSON,

               Petitioner,

    vs.                         **Case No. 08-3149-RDR**

RAYMOND ROBERTS, JR. and
the ATTORNEY GENERAL OF
KANSAS,

               Respondents.

_____

## MEMORANDUM AND ORDER

    This case is before the court upon petitioner's request for relief pursuant to 28 U.S.C. § 2254.  Petitioner was convicted after a jury trial of one count of first degree felony murder in violation of K.S.A. 21-3401, and one count of sale of cocaine in violation of K.S.A. 65-4161(a).  The two counts were charged in separate cases which were consolidated for trial.  The jury found that the felony murder was based upon the crimes of felony theft and aggravated robbery.  Petitioner received a life sentence on the felony murder conviction and a consecutive sentence of 44 months on the cocaine sale conviction.  Petitioner's convictions were affirmed on direct appeal by the Kansas Supreme Court.  State v. Donaldson, 112 P.3d 99 (Kan. 2003).  Petitioner filed a petition for state habeas relief under K.S.A. 60-1507.  This petition was denied by the trial court.  The denial was affirmed by the Kansas Court of Appeals in Donaldson v. State, 2007 WL 4577917 (Kan.App.

2007), and review by the Kansas Supreme Court was denied on May 28, 2008.

FACTUAL BACKGROUND

The murder alleged in the felony murder count occurred on December 31, 2001 at approximately 11:30 a.m. in Wichita, Kansas. The victim was a man named Benny Zeigler, who was shot in the head. The theory of the prosecution was that Vernon Harris, Lana Jackson and petitioner agreed to attempt to take money from Zeigler by selling him a fake powder and telling him it was cocaine. The sale of cocaine alleged in the other count occurred approximately ten months later on October 26, 2002, according to the prosecution. As previously stated, these two separate crimes were joined for trial, pursuant to a motion for joinder granted by the trial court.

The evidence at trial, construed in a light favorable to the prosecution, was that Lana Jackson contacted petitioner on the morning of December 31, 2001 and mentioned the idea of "jacking" Benny Zeigler by selling him fake cocaine. At that time, petitioner was staying at a house with Clifton Brown. Jackson and petitioner spoke over the phone and in person that morning. Jackson and a friend, Jessica Cruz, drove to the house where petitioner was staying. Petitioner got in Jackson's car with Jackson and Cruz, and they drove about. Cruz decided she wanted out and was dropped off from the car.

Petitioner tried to contact Vernon Harris to help with the

2

scheme because petitioner knew Zeigler and thought that Zeigler would never participate in the deal if Zeigler knew that petitioner was involved. Harris returned petitioner's call and agreed to join the scheme. Petitioner and Jackson connected with Harris and arranged to meet Zeigler at a car wash. Zeigler felt that the car wash was too visible, so they drove away - - Zeigler in one vehicle and the other three in Jackson's vehicle. They decided to stop in front of Trisha Shelinbarger's house, apparently because Jackson had once stayed with Shelinbarger. Zeigler and Harris asked to enter Shelinbarger's house, but were denied entry. As they were returning to their vehicles, Zeigler, Harris and Jackson engaged in a scuffle. Jackson sprayed mace on Zeigler, and Zeigler was shot in the top of the head. He died as a result of the wound. While this was occurring, petitioner was in the back seat of Jackson's car, hiding so that Zeigler could not see him. Jackson and Harris returned to Jackson's car and they drove away with petitioner. When petitioner eventually returned to Clifton Brown's house, he told Brown that "shit didn't go right." He also had a gun. Brown told petitioner to remove the gun from the house.

After Zeigler was shot, the police were looking for petitioner. He went to Salina, Kansas and later to Nebraska for a period, but returned to Wichita. On October 26, 2002, Wichita police received a tip regarding how to contact petitioner. Officer Padron called a number which turned out to be the number for

petitioner's girlfriend's phone. Petitioner answered the phone and a drug deal was arranged for a location near Second Street and Hydraulic in Wichita. A Wichita police undercover officer and a confidential informant arranged to be at that location. They waited in the informant's car in a parking lot. Petitioner drove to the parking lot in a vehicle with two passengers. The informant approached the vehicle and was told that the area was too visible. The informant returned to his car and then petitioner called the informant back to petitioner's vehicle. Petitioner appeared to take money from the informant and the police approached the vehicle to make an arrest. The informant took the money back from petitioner and left. Petitioner was ordered out of the vehicle and was observed dropping a small bag to the ground and then stepping on it as he was standing outside the vehicle. The bag contained .54 grams of cocaine.

Petitioner was interrogated by the police after his arrest regarding the murder of Benny Zeigler. He first told the police: that he was in the back of Jackson's car; that he discussed Jackson's idea to "jack" Benny Zeigler; that petitioner knew Zeigler and didn't want anything to do with it; that he continued riding in the car, smoking "swank" and drinking beer; that Jackson picked up a man named "Bo-Jo"; that petitioner was intoxicated and passed out; that he heard a gunshot, awakened, and saw Jackson and "Bo-Jo" enter the car; that Jackson told him she shot Zeigler; that

petitioner did not take any money offered by Jackson when he was dropped off from the car; and that Vernon Harris was not involved in the events.

The police told defendant that his account wasn't true and showed him notes where Vernon Harris said Harris was at the scene of the shooting.  Petitioner then gave the police a second account, stating:  that Lana Jackson called and proposed "jacking" Benny Zeigler; that petitioner knew Jackson had a gun; that petitioner knew Zeigler and knew he couldn't be seen by Zeigler; that petitioner wanted the money; that petitioner called Vernon Harris; that Vernon Harris called back and agreed to be involved; that petitioner and Jackson met Vernon Harris at a laundromat; that they drove to a car wash to meet Zeigler, but Zeigler did not want to do the deal there; that they drove to the location where the shooting occurred; that Jackson used dog mace upon Zeigler, and Harris shot Zeigler while trying to rob him of money; that petitioner was hiding in the back of Jackson's car while this happened; and that Jackson dropped him off at Clifton Brown's house after these events.

At his trial, petitioner gave another version of the events. He testified that he spent most of the day of Zeigler's homicide at Clifton Brown's house.  Petitioner stated that he left in the afternoon to get something to eat with his brother and also left that evening to celebrate New Year's Eve.  He denied being in a car

with Lana Jackson or Vernon Harris.  Petitioner also denied selling cocaine on October 26, 2002.  Petitioner stated that he was driving a vehicle that belonged to the acquaintance of a friend and simply drove where he was told to go.

HABEAS STANDARDS

A writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented at trial."  28 U.S.C. § 2254(d)(1)&(2).  State court factual findings are presumed correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

The Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

The law limits the authority of the court to hold an evidentiary hearing upon petitioner's application for relief:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - - (A) the claim relies on - - (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

ARGUMENTS

Sufficiency of the evidence - first degree murder

Petitioner's first argument is that the evidence was insufficient to convict petitioner of first degree murder. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This standard reflects our system's longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004) cert. denied, 545 U.S. 1106 (2005).

This standard was applied by the Kansas Supreme Court when it

reviewed the sufficiency of the evidence during the direct appeal of petitioner's convictions.    Donaldson, 112 P.3d at 106-08. Petitioner asserts that the Kansas Supreme Court failed to apply the Jackson standard because it did not recite the "essential elements" language of the Court in Jackson.    We find that the Kansas Supreme Court's recitation of the Jackson standard in effect adopts the "essential elements" aspects of the Jackson standard. The Kansas Supreme Court asked whether "a rational factfinder could have found the defendant guilty beyond a reasonable doubt."   112 P.3d at 106.   A rational factfinder could not have done so unless each of the "essential elements" of the crime had been proven beyond a reasonable doubt.

Petitioner contends that the evidence is insufficient to demonstrate to any rational trier of fact either that petitioner was present at the time of Zeigler's homicide or that petitioner played any part in the homicide.   We reject this contention.

There is clearly evidence to support a rational finding that petitioner was present at the scene of the homicide.   Petitioner admitted that he was present during his interrogation by police officers.   A reasonable jury could believe these statements.   These statements are also consistent with Clifton Brown's testimony and part of the testimony of Jessica Cruz.

The second half of petitioner's sufficiency of the evidence argument is that he was only present at the scene and did not aid

8

or abet the crimes against Zeigler.

This issue places before the court the somewhat contrasting language and results of the Kansas Supreme Court in State v. Wakefield, 977 P.2d 941 (Kan. 1999) and State v. Green, 697 P.2d 1305 (Kan. 1985).  In Wakefield, the defendant was participating in the aggravated burglary of a home.  The parents in the home were sleeping in an upstairs bedroom.  The defendant's accomplice suggested murdering the parents.  The defendant told the police that he discouraged doing so and refused to do it himself. Nevertheless, the accomplice went to the upstairs bedroom and shot the parents while the defendant continued to burglarize the home. The defendant was convicted of aiding and abetting the murder, despite his claims that he did not participate in the crime.  The Kansas Supreme Court found that the evidence was sufficient to support the murder conviction, reciting the following language which has been often repeated in later cases:

> It is well established in Kansas law that the mere presence of an accused at the time and place of the crime alleged is not sufficient to make the accused guilty of the crime, but if from the facts and circumstances surrounding the defendant's presence at the time and from the defendant's conduct it appears that the defendant's presence did in fact encourage someone else to commit the criminal act, guilt may be inferred.  State v. Smolin, 221 Kan. 149, 153, 557 P.2d 1241 (1976).  In the absence of anything in a person's conduct showing a design to encourage, incite, aid, abet, or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that the person assented to the commission of the crime, lent his or her countenance and approval thereto, and thereby

9

aided and abetted the commission of the crime.  221 Kan.
at 153, 557 P.2d 1241.

977 P.2d at 947.

In Green, the defendant and two friends were "driving around" in the car of one of the friends.  A decision was made to steal some wheels and tires for the car at a car dealership, but there was no clear evidence that the defendant was involved in the decision to commit the theft.  He was sitting in the back seat at the time and testified in a preliminary hearing that he did not hear much of what was discussed.  One of the friends testified that it was his decision to stop at the car dealership.  While the two friends were stealing tires and wheels from a pickup truck, the defendant drove away because he did not want to be involved in the theft, according to the testimony of the two friends.  The defendant later returned to pick up his friends.  They loaded the tires into the trunk of the car.  The defendant did not help with this.  Later, the car was stopped and the defendant was arrested with his friends.  At a preliminary hearing, it was determined that there was insufficient evidence that the defendant was guilty, even as an aider or abettor.  On appeal, the Kansas Supreme Court affirmed with three justices dissenting.  The majority found that the defendant was "nothing more than a 'mere associate' with the principals" and that there was no evidence that the defendant was "'willfully furthering the success of the venture.'"  697 F.2d at 1308.

The Kansas Supreme Court held that the facts of the instant case were distinguishable from the facts in <u>Green</u> and that the above-quoted language from <u>Wakefield</u> was applicable to this matter. <u>Donaldson</u>, 112 P.3d at 107.   We believe this is a reasonable determination of the facts and a reasonable application of the law.

A reasonable jury could believe that petitioner discussed "jacking" Benny Zeigler with Lana Jackson in the morning of December 31, 2001.  Petitioner was willing to participate because he wanted a share of the money, approximately $3,000.00. Petitioner knew that Jackson had a gun.  Petitioner made contact with Vernon Harris to get his assistance, because petitioner knew he could not be seen by Zeigler.  Petitioner rode with Jackson and Harris, first to a car wash and then to Trisha Shelinbarger's house, for the purpose of having Jackson and Harris "jack" Zeigler. He did not withdraw from the scheme; in fact, he hid low in the back seat of Jackson's vehicle so that the scheme could go forward. After Zeigler was shot, petitioner rode away with Jackson and Harris.  He saw Harris take approximately $650.00 as Harris' share, but petitioner said he did not take any money himself.  There is no evidence that petitioner did take money.  There is evidence that he returned with a gun.  Petitioner split away from Jackson and Harris and avoided the police by leaving Wichita, first by going to Salina and later Nebraska.  Petitioner also made a videotape to exonerate Harris after Harris was convicted.

A reasonable jury could conclude that defendant acted in a manner to encourage the aggravated robbery and theft from Benny Zeigler and willfully aided and abetted those crimes.  Accordingly, there was sufficient evidence to support the conviction for the felony murder that was committed during the course of the aggravated robbery and theft.  Cf., State v. Herron, 189 P.3d 1173 (Kan. 2008) (felony murder conviction affirmed where defendant participated in the mobilization for a retaliatory drive-by shooting - - defendant also rode in the vehicle but there was no evidence that he did any of the shooting).

Petitioner contends that there was no evidence regarding the amount of money or goods taken from Zeigler.  However, the record does support a finding that at least $650.00 was taken.  (Vol. II, p. 172).  That amount was sufficient to support a conviction for felony theft at the time of petitioner's trial.  K.S.A. 21-3701 (2002).

Petitioner also argues that there was no proof or jury finding that felony theft was an "inherently dangerous" felony.  However, the Kansas statutes define felony theft as alleged in this case as an "inherently dangerous" felony.  Murder in the first degree is defined to include a killing of a human being "in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto." K.S.A. 21-3401(b).  K.S.A. 21-3436 lists "felony theft under

12

subsection (a) or (c) of K.S.A. 21-3701" as an "inherently dangerous felony" for the purposes of K.S.A. 21-3401(b).  K.S.A. 21-3701(a) describes "obtaining or exerting unauthorized control over property" as felony theft.  The jury in this case found that petitioner committed felony theft according to this definition. See jury instructions, Vol. III at p. 51.  Therefore, the jury did find that petitioner committed an "inherently dangerous" felony.

The case law cited by petitioner (State v. Lashley, 664 P.2d 1358 (Kan. 1983) and State v. Underwood, 615 P.2d 153 (1980)) was written before statutory changes in the Kansas murder statutes were adopted, and these changes governed at the time of petitioner's trial.  Moreover, petitioner does not deny that aggravated robbery is an "inherently dangerous" felony.  The jury found that petitioner was guilty of felony murder predicated upon aggravated robbery in addition to felony theft.

For all of the above-stated reasons, the court rejects petitioner's claim that the evidence was insufficient to support his felony murder conviction.

Sufficiency of the evidence - sale of cocaine

Petitioner alleges that there was no evidence of an exchange of money for cocaine.  The informant who was sent to purchase the cocaine still had the money and did not have the cocaine when the arrest was made.  Therefore, petitioner asserts that the evidence was insufficient to support petitioner's cocaine sale conviction.

13

The evidence, once again examined in a light favorable to the prosecution, demonstrated that a cocaine sale was organized over the phone with petitioner.   A confidential informant and an undercover police officer were waiting in a parking lot when petitioner arrived driving a vehicle with two passengers.   The informant approached petitioner, who at first thought it was too visible to perform the sale there, but then changed his mind.   The informant was giving petitioner the money for the cocaine sale when the arrest was executed.   Petitioner was observed dropping a small bag of cocaine from his hand to the parking lot and then stepping on it during the process of the arrest.

The statute charging the crime in this matter makes it illegal to "offer" to sell a controlled substance.  K.S.A. 65-4161(a).   In other words, selling and offering to sell cocaine are illegal under the statute.   A reasonable view of the evidence supports the conclusion that petitioner did offer to sell cocaine.   Therefore, we reject petitioner's contention that the evidence was insufficient to support his cocaine conviction.

Joinder of charges for trial

Petitioner contends that he was denied his right to a fair trial by the trial court's decision to grant joinder of the charges against him.  When this contention was considered on direct appeal, the Kansas Supreme Court suggested some reservations regarding the decision to consolidate the charges for trial, but determined that

14

there was no abuse of discretion and no direct and tangible prejudice caused to petitioner.  Donaldson, 112 P.3d at 106.

The issue on habeas review is whether improper joinder resulted in "'prejudice so great as to deny a defendant his . . . right to a fair trial.'"  Webber v. Scott, 390 F.3d 1169, 1178 (10th Cir. 2004) (quoting Lucero v. Kerby, 133 F.3d 1299, 1314 (10th Cir.) cert. denied, 523 U.S. 1110 (1998)); see also, Cummings v. Sirmons, 506 F.3d 1211, 1239 (10th Cir. 2007) cert. denied, 128 S.Ct. 2943 (2008).  This places an "onerous burden" upon petitioner.  Lucero, 133 F.3d at 1314 (quoting Herring v. Meachum, 11 F.3d 374, 378 (2nd Cir. 1993)).  Petitioner's citation to Pointer v. United States, 151 U.S. 396 (1894) does not persuade the court that a more strict standard should be applied.  Pointer did not involve a constitutional claim and the law regarding the review of misjoinder claims in federal criminal cases has changed substantially since 1894.  See United States v. Lane, 474 U.S. 438 (1986).

We do not believe that petitioner has satisfied his burden of showing prejudice in this case.  As petitioner notes (see Doc. No. 7 at p. 19), the evidence regarding the two charges was separate and distinguishable.  Therefore, the jury should not have confused the charges and should have been able to obey the trial court's instruction to give the charges separate consideration.  The evidence regarding one of the charges did not overwhelm the other charge.  Nor was either charge so inflammatory that joinder should

have been prejudicial to petitioner.  Petitioner's broadly stated assertions of prejudice are not persuasive to the court. Therefore, the court rejects petitioner's misjoinder claims.

Aiding and abetting instruction

Petitioner asserts that the evidence at trial did not justify the trial court giving an aiding and abetting instruction.  This argument is a reconstituted claim that the evidence did not support petitioner's felony murder conviction.  The court has already ruled otherwise.

To the extent that petitioner contends that the jury instruction regarding aiding and abetting violated petitioner's due process rights, petitioner has failed to exhaust this claim by presenting it to the Kansas Supreme Court on direct appeal or to the Kansas Court of Appeals on state habeas review.  Therefore, it should not be considered by this court because of procedural default.  As held by the United States Supreme Court in O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999), a petitioner's failure to timely seek review by the state's highest appellate court results in procedural default of any claims not presented to such court.

Petitioner makes the further claim (see Doc. 24 at p. 9-10) that the aiding and abetting instruction was unconstitutional because it shifted the burden of proof to defendant.  The court denies this contention.  The instructions of the trial court did not direct the jury to presume any element of the crimes charged.

16

The prosecution was required to prove each element as defined in the instructions.

For the above-stated reasons, the court rejects petitioner's arguments regarding the aiding and abetting instruction.

Motion to endorse Clifton Brown as a prosecution witness

Petitioner claims that he was denied a fair trial because the trial court granted a late motion by the prosecution to endorse Clifton Brown as a witness.  The facts regarding this issue do not appear in dispute.  Clifton Brown was originally listed as an alibi witness for petitioner.  He was in custody and was transported to Wichita on the first day of petitioner's trial.  He was interviewed in Wichita by petitioner's attorney and by a detective for the Wichita Police Department late on that day.  Immediately before the beginning of the second day of petitioner's trial, the prosecution moved to endorse Brown as a witness.  Petitioner objected, but did not ask for a continuance.  The trial court granted the motion, finding that there was no unfair surprise to petitioner.

The court shall reject petitioner's argument for the following reasons.  First, as asserted by respondent, petitioner does not identify a clearly established rule of federal law which was violated by the decision to endorse Clifton Brown as a prosecution witness.  As stated in House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008), to violate clearly established federal law a state court ruling must contradict "the governing law set forth in

17

Supreme Court cases" or arrive at a result different from the
Supreme Court when faced with a materially indistinguishable set of
facts.  There is no federal constitutional right to non-exculpatory
discovery in a criminal proceeding.  <u>Wilson v. Sirmons</u>, 536 F.3d
1064, 1103 (10th Cir. 2008); see also, <u>Gray v. Netherland</u>, 518 U.S.
152, 168-69 (1996) (habeas relief denied to petitioner who claimed
he was denied adequate notice of witnesses whom he learned would be
called on the evening prior to the sentencing hearing).

Second, we would reject any claim that plaintiff's right to
fundamental fairness was violated by the decision to permit the
prosecution to call Clifton Brown as a witness.  In <u>Fox v. Ward</u>,
200 F.3d 1286, 1296 (10th Cir.) <u>cert. denied</u>, 531 U.S. 938 (2000),
the Tenth Circuit described the high standard applied to such
claims.  "On habeas review, we will not disturb the state court's
evidentiary rulings unless the appellant demonstrates that the
court's error was 'so grossly prejudicial that it fatally infected
the trial and denied the fundamental fairness that is the essence
of due process.'" (Quoting, <u>Williamson v. Ward</u>, 110 F.3d 1508, 1522
(10th Cir. 1997)).  Petitioner has not met this standard.
Petitioner and his counsel were familiar with Mr. Brown.  Counsel
had interviewed Mr. Brown prior to his trial testimony.  No request
for continuance was made to permit additional preparation, and
petitioner's trial counsel was able to cross-examine Mr. Brown
during the trial.  Therefore, we find no grounds for habeas relief.

See Mayes v. Gibson, 210 F.3d 1284, 1292 (10th Cir.) cert. denied, 531 U.S. 1020 (2000) (late endorsement of witnesses does not justify habeas relief when defense counsel conducted adequate cross-examination of the witnesses and had a meaningful opportunity to explain the evidence they offered).

Prosecutorial misconduct

Petitioner asserts that he is entitled to habeas relief because the prosecutor at his trial made improper comments which caused his trial to be unfair.

The Tenth Circuit recently discussed the standards which are applied to consider such claims:

"[N]ot every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation." Tillman v. Cook, 215 F.3d 1116, 1129 (10th Cir. 2000). Unless prosecutorial misconduct implicates a specific constitutional right, a prosecutor's improper remarks require reversal of a state conviction only if the remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). To determine whether a trial is rendered fundamentally unfair, we examine the entire proceeding, "including the strength of the evidence against the petitioner . . . as well as any cautionary steps – – such as instructions to the jury – – offered by the court to counteract improper remarks." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutor's conduct." Id.

Wilson, 536 F.3d at 1117.

The improper remarks alleged by petitioner mostly fall into the category of stating an opinion as to petitioner's veracity.

19

While such remarks are sometimes improper, it is worthwhile to remember that the evidence in the case suggested that petitioner told the police two different versions of what happened when Zeigler was killed and then told a third markedly different version when he testified at trial.   The evidence viewed in a light favorable to the prosecution shows that petitioner told the police first that he was passed out in the back of the car when Zeigler was shot.   Petitioner told the police second that he was hiding in the back of the car when Zeigler was shot.   Petitioner testified at trial that he was never in the car with Jackson and Harris on the day Zeigler was shot.   Therefore, the believability of petitioner's various versions of the events was clearly a subject for the jury's consideration.

It also should be noted that characterizing a defendant as "lying" or as a "liar" is not always improper.

> Although labeling a defendant a "liar" is often "unnecessary" and "unwarranted," United States v. Nichols, 21 F.3d 1016, 1019 (10th Cir. 1994), we have held that referring to testimony as a lie is not per se prosecutorial misconduct, United States v. Robinson, 978 F.2d 1554, 1567 (10th Cir. 1992).   On the contrary, it is permissible for the prosecution to comment on the veracity of a defendant's story.   United States v. Hernandez-Muniz, 170 F.3d 1007, 1012 (10th Cir. 1999). We have therefore rejected claims of prosecutorial misconduct where the prosecution referred to a defendant as a liar on account of irreconcilable discrepancies between the defendant's testimony and other evidence in the case.   See id.; Nichols, 21 F.3d at 1019.

Bland v. Sirmons, 459 F.3d 999, 1025 (10th Cir. 2006) cert. denied, 127 S.Ct. 2117 (2007).

20

The instructions of the trial court are a factor to consider. In this case, the jury was instructed that it was the jury's task to determine the weight and credit to be given to the testimony of each witness. Vol. III, p. 49. Twice, the jury was instructed that the statements and arguments of counsel are not evidence. Vol. I, p. 15; Vol. III, p. 48.

Petitioner lists eleven statements in the prosecutor's closing argument which he believes constituted prosecutorial misconduct. The Kansas Supreme Court carefully considered each statement and determined that the statements either were not improper or were not so inappropriate as to prejudice petitioner. <u>Donaldson</u>, 112 P.3d at 109-112. Upon review, we do not believe the Kansas Supreme Court's conclusions were contrary to or an unreasonable application of clearly established federal law.

The prosecutor stated (referring to petitioner):

> he was lying in the back of the car. If you believe otherwise, I've got this big old bridge I own right outside San Francisco that I'd like to sell you, because his testimony is simply unbelievable.

Vol. III, p. 59. This comment refers to the believability of petitioner's testimony that he was not in the car with Jackson and Harris. It is a comment upon the discrepancy between his testimony and the other evidence in the case. It was not improper in our opinion.

The prosecutor also stated:

> Now, you have the individuals that testified, and

21

> what do we know, what do we have?  Mr. Donaldson, well,
> he denies everything, everything. If he was charged with
> believing that the sky was blue, he would deny that it
> was blue.
>     Now, he even denies the sale of cocaine, which he's
> busted, is what happens with Erick Donaldson.

Vol. III, p. 61.  This comment is simply a characterization of petitioner's position in his trial testimony which was that of a complete denial of any criminal involvement.  We do not find it inappropriate.

Another statement attacked by petitioner is:

> Now, the sale of cocaine, he makes a decision to sell
> cocaine.  And folks, he's driving the car.  You've heard
> the evidence of what happened.  Again, if you don't
> believe that it happened the way it happened, you believe
> what he had to tell you, how does this guy that he
> doesn't even know end up with his girlfriend's phone?

Vol. III, p. 62.  Again, this is a comment upon the discrepancy between petitioner's testimony and the other evidence in the case. Therefore, it was not improper.

Petitioner complains that the prosecutor stated: "Erick Donaldson shouldn't be given any credibility."  Vol. III, p. 63. However, this statement was made immediately after the prosecutor reminded the jury that it had the responsibility of determining the weight and credit to be given the testimony of each witness.  In this context, the prosecutor's comment was a fair statement of the State's position regarding petitioner's theory of defense.

Petitioner includes the following statement in his list of prosecutorial misconduct:

> And what does he testify to when he comes in and he talks
> to Detective Chisholm, I'll tell you everything you want
> to know if you let me talk to my girlfriend.  That's a
> lie.

Vol. III, p. 64.  This statement was made at the conclusion of several points which seemed designed to contrast petitioner's trial testimony that he didn't leave the house on the morning of December 31, 2001 with many other statements attributed to petitioner at the time of his arrest and when he was interrogated.  These were statements to the effect that he knew he was wanted by the police to talk about Zeigler's murder and that he would tell them everything they wanted to know if he could speak to his girlfriend first.  Once again, this appears to be a matter of pointing out the discrepancies between petitioner's trial testimony and other evidence in the case.[1]

Petitioner highlights the following statements as well:

> Why can't you believe Detective Chisholm when he swore an
> oath?  Do you really need a videotape of what happened?
> Do you really need a videotape when you have to compare
> it with what Erick Donaldson had to tell you with the
> things he wants to make you believe, wants to make you
> ignore and avoid an awful lot of stuff?

Vol. III, p. 66.

> Clifton Brown's going to come in here and tell you that
> [petitioner was involved in "jacking" Benny Zeigler]
> because of some unsupported allegation that Erick slept
> with his wife?

---

[1] We acknowledge that the Kansas Supreme Court held that this statement moved "into the area of impropriety."  <u>Donaldson</u>, 112 P.3d at 111.  We disagree with that conclusion, although it is not unreasonable in our opinion.

Vol. III, p. 70-71.

[Petitioner's] going to make himself guilty of felony murder to help a friend?  That's ridiculous, is what that is.

Vol. III, p. 87.

All they've done is attack the credibility of police officers that did excellent police work in this case, excellent police work.  What Officer Padron did in this case, quick thinking, very quick thinking.

Vol. III, p. 90.

These statements represent fair arguments as to why petitioner's testimony or why the petitioner's theory of the case should not be accepted by the jury.  They are not improper.

Petitioner also includes this statement as part of his claim of prosecutorial misconduct:

Well, it has become very apparent while Mr. Donaldson was testifying that he became caught in the web of his own untruths and he couldn't extract himself.  Like when your mother tells you, once you start telling a lie you get into some trouble.

Vol. III, p. 86.  The court concludes that this statement was improper, although it could arguably be considered merely a commentary upon the difficulty of reconciling petitioner's trial testimony with the other statements petitioner made which were introduced into evidence.[2]

Finally, petitioner argues that it was improper for the prosecutor to make the following statement:

---

[2] The Kansas Supreme Court also concluded that this statement moved "into the area of impropriety."  Donaldson, 112 P.3d at 111.

24

> [R]eally he wants you to believe that this guy he doesn't
> know the name of, is using his girlfriend's phone to set
> up a drug deal, then giving it back to him.  And then the
> guy says to go to this location, he doesn't know why,
> little Erick doesn't know why, can't figure it out, but
> we're just going to go down to the Eco Water place and go
> to some parking lot to meet some guy.

Vol. III, p. 69.  The Kansas Supreme Court determined that it was improper for the prosecutor to refer to petitioner as "little Erick."  However, the court also decided that this isolated comment was not so gross or flagrant that it required reversal of petitioner's convictions.  <u>Donaldson</u>, 112 P.3d at 112.  We agree with this analysis and find that it is not contrary to or an unreasonable application of clearly established federal law.

In summary, of the eleven statements labeled by petitioner as prosecutorial misconduct, we consider two of the statements to be improper.  However, we do not believe that these statements were so grossly or flagrantly improper that they deprived petitioner of a fair trial.  Even if more of the statements should have been found to have "crossed the line" of propriety, the court would not find that petitioner was denied a fair trial.  Some commentary regarding credibility was appropriate in this case because starkly different factual versions were stated in testimony.  The jury was properly instructed regarding their role in determining the weight of the evidence and that statements of counsel could not be considered as evidence.  The prosecution's theory of the case was supported by statements made by petitioner and several other witnesses.

25

Petitioner's credibility was clearly put at issue by his trial testimony's incongruity with petitioner's prior statements and the statements of other witnesses.  "'[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned.'  The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutor's conduct." Bland, 459 F.3d at 1024 (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  Here, we find that the state court's conclusion that petitioner was afforded a fair trial in spite of the prosecutor's improper comments is reasonable and supportable.  See Bland, 459 F.3d at 1024-25 (also involving characterizations of lying and ridicule, where the petitioner admitted that his trial testimony was different from previous stories he told to authorities).

### Addition of aggravated robbery count

Petitioner contends that his right to a fair trial was denied when on the eve of trial the court permitted the complaint to be amended to add an alternative charge of aggravated robbery as a predicate to felony murder.  The original charge alleged felony theft.  Both predicate charges proceeded to the jury and the jury found petitioner guilty of felony murder on each basis.

The Kansas Supreme Court rejected this claim.  Donaldson, 112 P.3d at 112-13.  It noted that petitioner had the same defense to the felony theft and aggravated robbery charges; that is, that

26

petitioner was at Clifton Brown's house when Zeigler was murdered. It was further noted that the evidence at the preliminary hearing supported both underlying charges and that no showing of prejudice or surprise was made. We concur with the reasoning of the Kansas Supreme Court and find that petitioner's claim fails to demonstrate a violation of clearly established federal law.

<u>Motion to suppress statements</u>

Petitioner argues that his clearly established constitutional rights were violated by the trial court's denial of his motion to suppress statements he made under interrogation. Petitioner asserts that he was sleep-deprived and that he had been drinking and taking a prescription headache medication. Given these alleged facts, petitioner asserts that the police should have waited to interrogate him rather than do so in the middle of the night when he was tired and under the influence of alcohol and drugs.

The trial court conducted a hearing upon the motion to suppress petitioner's statements. The trial court found that petitioner seemed tired, but did not appear to be under the influence of alcohol or drugs when he was interrogated. The Kansas Supreme Court carefully reviewed the record and affirmed the trial court's denial of the motion to suppress.

> Donaldson's confession was clearly voluntary based on his ability to communicate with the outside world and the fairness of the officers in conducting the investigation.
>    The record and testimony show Donaldson was placed in an interview room at approximately 11 p.m. Detective Chisholm arrived to interview him at approximately 11:30

27

> p.m. Donaldson asked to see his girlfriend, so Detective
> Chisholm arranged to have her come to the police station
> so she could talk to Donaldson.   While waiting for
> Donaldson's girlfriend, Detective Chisholm asked
> Donaldson some personal history questions and completed
> a personal history form.   When Donaldson's girlfriend
> arrived, Detective Chisholm allowed her to talk to
> Donaldson for about 17 minutes.   Detective Chisholm
> advised Donaldson of his <u>Miranda</u> rights at approximately
> 1 a.m. and then interviewed him sporadically until about
> 3:55 a.m.   During the approximately 5-hour interview,
> Donaldson was allowed to have several cigarettes, a
> hamburger, a drink, and bathroom breaks.
>
> The record showed Donaldson was 27 years old and
> that he had substantial experience with the judicial
> system.

<u>Donaldson</u>, 112 P.3d at 114.

A confession is involuntary if the government's conduct "causes the defendant's will to be overborne and his capacity for self-determination critically impaired." <u>Lucero v. Kirby</u>, 133 F.3d 1299, 1311 (10th Cir.) <u>cert. denied</u>, 523 U.S. 1110 (1998) (interior quotations omitted).   A court must look at the "totality of circumstances" including the defendant's characteristics and the details of the interrogation to determine the voluntariness of a confession.   <u>Id</u>.   Relevant factors include: age, intelligence and education of the defendant; the length of detention and questioning; the use or threat of physical punishment; when <u>Miranda</u> warnings have been given; the defendant's physical and mental characteristics; the location of the interrogation; and the conduct of the police officers.   <u>Id</u>.; see also, <u>Smith v. Mullin</u>, 379 F.3d 919, 934 (10th Cir. 2004).

Our review of the record finds that the state courts' findings

28

and conclusions are reasonable and not contrary to or an unreasonable application of clearly established federal law. Therefore, the court rejects this argument for habeas relief.

Sale of cocaine versus attempted sale of cocaine

The jury at petitioner's trial was instructed on the crimes of sale of cocaine and the lesser included offense of attempted sale of cocaine. The jury found petitioner guilty of sale of cocaine and this conviction was upheld on direct appeal to the Kansas Supreme Court against the claim that the facts did not demonstrate a completed sale. The Kansas Supreme Court found that the term "sale" is broadly defined in Kansas to include an "offer" of sale and that "[t]here was a plethora of testimony that showed an offer of sale and an actual attempt to transfer possession of the cocaine." Donaldson, 112 P.3d at 115. Petitioner argues no "sale" of cocaine was completed, since there was no exchange of cocaine for money, and that any broad definition of "sale" to include an "offer" to sell renders the definition of "sale" the same as the definition of an "attempt to sell." Petitioner has previously claimed, at least to the Kansas Court of Appeals in his appeal of the denial of his K.S.A. 60-1507 motion, that petitioner can only be sentenced under the lesser penalty provision for attempted sale of cocaine. Petitioner attempts to renew that claim in this § 2254 action.

Petitioner's claim must be rejected for the following reasons.

29

First, petitioner does not identify a violation of clearly established federal law.  Petitioner only cites state law for his contention.

Petitioner perhaps contends that federal law was violated because his counsel was constitutionally ineffective for failing to raise this argument.  But, petitioner does not meet the standards for showing ineffective assistance of counsel.

Ineffective assistance of counsel claims are governed by the standards in Strickland v. Washington, 466 U.S. 668 (1984).  "A petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the petitioner's defense."  Wiggins v. Smith, 539 U.S. 510, 521 (2003).  "Deficient performance" is proven by demonstrating that counsel's performance "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  "Prejudice" is proven by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  This standard requires less than a preponderance of the evidence; petitioner does not have to prove more probably than not that the outcome would have been different.  Smith, 379 F.3d at 942.  The Supreme Court has stated:

> A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects

30

> of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional
> assistance; that is, that the defendant must overcome the
> presumption that, under the circumstances, the challenged
> action might be considered sound trial strategy.

Strickland, 466 U.S. at 689 (interior citations and quotations omitted).

The Kansas Supreme Court held that the facts supported petitioner's conviction for a sale of cocaine. The Kansas Court of Appeals held that the elements of the offense of sale of cocaine are different from the elements for an attempted sale of cocaine. Donaldson v. State of Kansas, 2007 WL 4577917 (Kan.App. 2007). Therefore, the Kansas Court of Appeals found that the state law authority cited by petitioner, State v. McAdam, 83 P.3d 161 (Kan. 2004), was distinguishable because it applied to statutory offenses with identical elements.

It was objectively reasonable for petitioner's counsel to fail to raise this issue which has been rejected by the state appellate courts. Furthermore, raising the issue would not have altered the result in petitioner's case. Therefore, the court rejects this claim for habeas relief.

Use of "non-testifying co-defendants" statements and convictions for the same crime

Petitioner was the only defendant in the criminal case under

31

review.   As stated, he was alleged to have participated in "jacking" Benny Zeigler with Vernon Harris and Lana Jackson, who did not testify at trial.  So, petitioner refers to Harris and Jackson as "co-defendants."  During the trial, references were made to Vernon Harris and Lana Jackson being convicted in connection with the murder of Benny Zeigler.  There were also references made to Harris and Jackson making statements which placed petitioner at the scene of the murder, even doing the shooting.  Petitioner asks for habeas relief on the grounds that this was inadmissible evidence and that his counsel was ineffective for failing to object or appeal on the grounds that this evidence was erroneously permitted.   The court shall discuss the references to the convictions of Harris and Jackson in this section of the opinion and in another section addressing the issue of vouching.  We shall address the other statements attributed to Harris and Jackson in the next section of this opinion.

As petitioner notes, the federal law in this circuit holds that a co-defendant's guilty plea may not be used as substantive evidence of a defendant's guilt.  U.S. v. Whitney, 229 F.3d 1296, 1304 (10th Cir. 2000); U.S. v. Austin, 786 F.2d 986, 991 (10th Cir. 1986); U.S. v. Baez, 703 F.2d 453, 455 (10th Cir. 1983).  Our review of the record indicates that this rule was not violated by references to the convictions of Harris and Jackson.  During the cross-examination of petitioner, there was a discussion of

petitioner's various versions of what happened, including a videotape petitioner made at the request of Vernon Harris after Harris had been convicted.  During the examination of petitioner and during the examination of petitioner's interrogator, Detective Chisholm, testimony was received regarding how petitioner first stated that Vernon Harris was not involved and how this was consistent with the videotape petitioner made, and then how petitioner changed his version of what happened and stated that Vernon Harris was involved.  Testimony indicated that petitioner changed his version of what happened after being confronted with notes indicating that Vernon Harris told the police that petitioner was involved in "jacking" Benny Zeigler.  Thus, the conviction of Vernon Harris was merely background information which helped explain the possible motivation for making the videotape for Vernon Harris, the motivation for petitioner's statements during interrogation, and the approach of Detective Chisholm as he conducted the interrogation - - in other words, why he told petitioner that petitioner was not telling the truth.

There was also a reference in closing argument by the prosecutor to Detective Chisholm having no motive to give false testimony when doing so might ruin his career and "the two other individuals that are already tried and convicted."[3]  Vol. III, p.

---

[3]  This statement was part of petitioner's claim of prosecutorial misconduct in his direct appeal.  The Kansas Supreme Court found that the statement was improper, but that it did not

66.    This  statement  was  then  mentioned  by  petitioner's  trial
counsel  in  his  closing  argument  as  he  claimed  that  "he  didn't
realize  what  the  State's  theory  of  their  case  was  until  closing
argument,  when  counsel  told  you  that,  well,  two  other  people  have
been  tried  and  convicted."    Vol.  III,  p.  73.    The  prosecutor
replied  when  he  finished  his  closing  argument  that:

> Now,  Mr.  Brown  started  off  his  argument  saying  that  I  was
> arguing  or  the  State's  theory  is  he's  guilty  because  the
> other  two  are  guilty.    That's  not  what  I  said,  and  I
> stood  here  and  said  repeatedly  throughout  that's  why  he's
> on  trial  here  on  his  own  case.    That  statement  was  made
> in  the  context  of  attacking  Detective  Chisholm's
> credibility.    That's  what  that  statement  was  for.    You
> are  to  determine  whether  or  not  Mr.  Donaldson  is  guilty,
> and  so  let's  keep  it  to  what  really  is  being  said.

Vol.  III,  p.  86.

We  agree  with  the  prosecutor's  characterization  of  his  closing
argument.    The  prosecutor  was  stating  that  Detective  Chisholm  had
no  motive  to  ruin  the  lives  of  two  other  people  and  ruin  his  career
by  testifying  falsely.    The  prosecutor  was  not  saying  two  other
people  were  convicted  so  the  jury  should  believe  Detective
Chisholm's  testimony  or  the  jury  should  convict  petitioner.

We  find  that  the  references  to  the  convictions  of  Jackson  and
Harris  were  not  done  to  present  substantive  evidence  of
petitioner's  guilt.    The  references  in  the  testimony  were  to
provide  the  background  and  context  for  assessing  the  testimony  of
Detective  Chisholm  and  petitioner.    Petitioner's  interrogation  by

prejudice  petitioner.    Donaldson,  112  P.3d  at  111-12.

Detective Chisholm and his changing versions of what happened were an important part of this trial.   The prosecution was asking the jury to believe some of petitioner's statements and not others. Petitioner was asking the jury to disbelieve the key parts of everything he told Detective Chisholm and to believe his trial testimony that he stayed in Clifton Brown's house when Benny Zeigler was "jacked."   The prosecution was claiming that petitioner only decided to tell the truth to Detective Chisholm after he was told that Detective Chisholm did not believe him and was confronted with the notes of what Vernon Harris told the police.   Petitioner testified that Vernon Harris was just an old friend whom he thought was innocent and was trying to help.   Therefore, evidence regarding what was said and known by Detective Chisholm and petitioner, as well as why different versions of what happened were stated, was relevant to this case.

In addition, there was no dispute in this case that Vernon Harris and Lana Jackson robbed and killed Benny Zeigler. Therefore, the fact that they were convicted was not relevant to a controverted element of the crime.   The only disputed matter to which it was relevant was the interrogation of petitioner, as testified to by Detective Chisholm and petitioner, as well as to assessing petitioner's different versions of events.

Furthermore, other strong evidence supported the prosecution's claim that petitioner participated in the crime.   There were

35

statements from Clifton Brown and Jessica Cruz (through her testimony and her interview as described by Detective James Hosty). There were also statements by petitioner that petitioner played a role in "jacking" Zeigler. For these reasons, the Kansas Supreme Court was correct in finding that petitioner did not suffer prejudice from any alleged error caused by the references to the convictions of Harris and Jackson.

In summary, we do not find that the prosecution referred to the convictions of Harris and Jackson as substantive evidence of petitioner's guilt of felony murder.[4] We also hold that the references to the convictions were not prejudicial to petitioner. Accordingly, petitioner's argument fails to warrant habeas relief.

<u>Hearsay</u>

This claim is confusingly phrased as follows in petitioner's brief:

> Use of non testifying co-defendants attempt to lessen the question is whether that substantive use of hearsay confession denied petitioner's right under the confrontation clause.

Doc. 7, p. 36. For elaboration upon this claim, petitioner's brief refers the court to his memorandum for the state district court in support of his state habeas petition. That part of the memorandum appears to refer to the statements of Harris and Jackson that were

---

[4] As noted later in this opinion, we believe the references to the convictions were part of the prosecutor's improper vouching for Detective Chisholm, but not vouching which caused an unfair trial.

mentioned in the testimony of other witnesses at petitioner's trial. In the appeal of the denial of the state habeas petition to the Kansas Court of Appeals, petitioner's brief referred to statements attributed to Jackson in the testimony of Jessica Cruz.

There were several objections made on the basis of hearsay during the examination of Jessica Cruz. Those objections were frequently granted. This court may assume that the jury followed instructions and disregarded testimony to which an objection was sustained and, therefore, that petitioner did not suffer prejudice from the admission of hearsay. See Wilson, 536 F.3d at 1120; Moore v. Gibson, 195 F.3d 1152, 1173 (10th Cir. 1999) cert. denied, 530 U.S. 1208 (2000). Petitioner does not identify specifically what aspects of Cruz's testimony were prejudicial to petitioner. The court has reviewed the entire trial transcript, including the testimony of Jessica Cruz. We do not believe petitioner suffered unfair prejudice during the examination of Cruz, who by and large was hostile to the prosecution's line of questioning. If improper testimony was elicited, the court does not believe the outcome of petitioner's trial was affected by it.

Petitioner may also be referring to statements of Harris and Jackson which were mentioned in the testimony of Detective Chisholm and petitioner. These statements, however, were not introduced for their truth, but to provide the context for the interrogation of petitioner and what petitioner said during his interrogation.

37

Therefore, they were not hearsay.

<u>Vouching for Detective Chisholm</u>

As previously noted, the prosecutor at petitioner's trial made the following remarks in his closing statement:

> Why can't you believe Detective Chisholm when he swore an oath?  Do you need a videotape of what happened?  Do you really need a videotape when you have to compare it with what Erick Donaldson had to tell you[,] with the things he wants to make you believe, wants to make you ignore and avoid an awful lot of stuff? . . .
> The fact of the matter is, is that the only person with the incentive to tell you something that is not true is Erick Donaldson.  Does Detective Chisholm get some brownie points, does he get additional salary?  What does he get for coming in here and making something up, other than possibly ruining his career, and the two other individuals that are already tried and convicted.  So, no Detective Chisholm is simply telling you what happened.

Vol. III, p. 66.  The Kansas Supreme Court concluded that this statement improperly bolstered the credibility of Detective Chisholm and improperly told the jury of the result of previous trials.  <u>Donaldson</u>, 112 P.3d at 111.  It also concluded that this error did not prejudice petitioner's right to a fair trial.

The Tenth Circuit has stated with regard to improper vouching:

> "[A] prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process."  <u>Duckett v. Mullin</u>, 306 F.3d 982, 988 (10th Cir. 2002).  Improper vouching for witnesses falls within this general principle.  <u>See</u>, <u>e.g.</u>, <u>Moore v. Gibson</u>, 195 F.3d 1152, 1173, 1175 (10th Cir. 1999); <u>Kappos v. Hanks</u>, 54 F.3d 365, 367 (7th Cir. 1995).

<u>Cargle v. Mullin</u>, 317 F.3d 1196, 1220 (10th Cir. 2003).

The Kansas Supreme Court found that the errors committed by

the prosecutor did not deprive petitioner of a fair trial. We believe this was not contrary to or an unreasonable application of clearly established federal law. The prosecutor in this case did not personally vouch for Detective Chisholm or suggest that he had special inside knowledge which confirmed Chisholm's credibility. Nor did the prosecutor imply, as in some cases which discuss improper vouching, that the trial court was monitoring the credibility of a prosecution witness. The improper vouching was a small part of the closing argument and the jury was instructed at the beginning and the end of the trial that the arguments of counsel did not constitute evidence in the case.

Detective Chisholm's credibility was a <u>potentially</u> important issue in this case because he conducted the interrogation of petitioner and only the first part of that interrogation was captured on videotape, not the later part which was the most helpful to the prosecution as recounted by Detective Chisholm. Petitioner denied making inculpatory statements which were not recorded on the videotape. Vol. III, p. 39. Nevertheless, Detective Chisholm's credibility was hardly argued, if at all, by defense counsel at trial. In addition, Detective Chisholm's account of the interrogation was buttressed by the testimony of Officer Padron of the Wichita Police Department. Vol. I, p. 163-64. Hence, while the prosecutor's argument that Detective Chisholm did not have a motive to lie was improperly stated, it does not

appear to the court that it addressed a major area of dispute.

In light of the fact that there was other evidence in support of the prosecution's case from Jessica Cruz, Clifton Brown, Detective Hosty and Officer Padron (among others), the court believes that it may reasonably be ruled that the improper vouching comments did not deny petitioner of a fair trial. Nor does the court believe that the failure of trial counsel to object at trial constitutes ineffective assistance of counsel because an objection, even if sustained, would not have changed the result of the trial.

### Fifth Amendment rights

Petitioner contends that defendant was improperly forced to surrender his Fifth Amendment rights by the admission of defendant's out-of-court statements. This argument was not made to the Kansas Supreme Court on direct appeal or to the Kansas Court of Appeals on state habeas review. Therefore, it should not be considered by this court because of procedural default. O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). Even if we did consider the issue, the court would reject petitioner's argument. Petitioner voluntarily waived his right to remain silent before his interrogation. Those statements were then admissible as admissions against interest. Petitioner also voluntarily waived his right to remain silent before testifying at trial. The fact that he decided to do so because of evidence which was admitted prior to his testimony, does not constitute coercion for Fifth Amendment

purposes.   The case law cited by petitioner appears to concern statements made by out-of-court declarants who are unavailable for cross-examination, relative to the guilt of a defendant.  Here, the statements were made by petitioner regarding his own situation, as opposed to statements regarding petitioner made by a person who could not be cross-examined.   See <u>State v. Torres</u>, 121 P.3d 429, 438 (Kan. 2005) (rejecting a similar argument); <u>Torres v. Roberts</u>, 253 Fed.Appx. 783 (10th Cir. 2007) (refusing to grant habeas relief on the basis of that argument).

### Not requiring full recordings of interrogations

Petitioner contends that his rights were violated by not requiring the prosecution to make a full recording of petitioner's interrogation.  This issue was not presented to the Kansas Supreme Court on direct appeal or to the Kansas Court of Appeals on review of petitioner's state habeas case.  Therefore, it is rejected on the grounds of procedural default.

In any event, as petitioner concedes, this argument does not allege the violation of a clearly established federal right.  <u>U.S. v. Owlboy</u>, 370 F.Supp.2d 946, 948-49 (D.N.D. 2005) (citing several federal court cases rejecting such a right); <u>Martin v. Lord</u>, 378 F.Supp.2d 184, 186 n.1 (W.D.N.Y. 2005) (same); <u>Torres</u>, 121 P.3d at 439 (finding no right to the recording of statements made to law enforcement officials under the United States or Kansas Constitutions).

41

<u>Ineffective Assistance of Counsel</u>

For the reasons already explained, there are no grounds to find an absence of objective reasonableness in counsel's decisions. Nor is there a reasonable probability of a different result if counsel had raised the issues detailed by petitioner. Therefore, the court rejects petitioner's claims of ineffective assistance of counsel.

<u>Absence of an evidentiary hearing</u>

Petitioner asserts that he should have had an evidentiary hearing upon his state habeas petition. However, petitioner does not assert credibly that this deprived him of a federal constitutional right. Nor does petitioner allege how the result of his state habeas review would have been different if such an evidentiary hearing had been conducted. This claim does not merit habeas relief.

<u>Cumulative error</u>

Finally, petitioner contends that the accumulation of errors he has identified in his petition justifies relief under § 2254. The Tenth Circuit discussed cumulative error standards in <u>Workman v. Mullin</u>, 342 F.3d 1100, 1116 (10th Cir. 2003) <u>cert. denied</u>, 541 U.S. 1067 (2004):

> Cumulative error is present when "the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." <u>Duckett v. Mullin</u>, 306 F.3d

982, 992 (10th Cir. 2002)(quoting <u>United States v.</u> <u>Rivera</u>, 900 F.2d 1462, 1469 (10th Cir. 1990)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>Id.</u>

The point of cumulative error review is to determine whether all actual errors, which are individually harmless, combine to render a trial unfair. <u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1196 (10th Cir.) <u>cert. denied</u>, 549 U.S. 1023 (2006).

In this case, errors have been identified in the closing statement of the prosecutor. These errors involved: referring to petitioner as "little Erick"; expressing an opinion as to petitioner's veracity; and mentioning the outcome of the trials of the "co-defendants" or otherwise vouching for the testimony of Detective Chisholm.

Upon review of the trial in this case, the court is convinced that the combination of errors which were committed did not render the trial unfair. The improper statements were small in volume. They did not dominate the proceedings. The credibility of Detective Chisholm was not substantially contested. In addition, there was significant and convincing evidence to support both convictions in this matter. Therefore, we reject petitioner's claim of cumulative error.

CONCLUSION

For the reasons explained above, petitioner's request for

43

habeas relief under § 2254 is hereby denied.

**IT IS SO ORDERED.**

Dated this 28th day of April, 2009 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge